SANI–DAIRY, et al., Plaintiffs,

v.

Clayton YEUTTER, Secretary
of Agriculture, et al.,
Defendants.

MILK MARKETING, INC., Plaintiffs,

v.

Clayton YEUTTER, Secretary of
Agriculture, Defendant.

Civ. A. Nos. 90–222J, 90–236J.

United States District Court,
W.D. Pennsylvania.

Oct. 29, 1991.

Marvin Beshore, Harrisburg, Pa., for plaintiffs.

Michael McCormick and Joan Kehoe, Albany, N.Y., for defendant Com'r of Agriculture & Markets.

John Valkovci, Asst. U.S. Atty., Pittsburgh, Pa., for defendant Secretary of Agriculture.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

### I. Introduction

These consolidated lawsuits challenge the legality of New York state and federal regulations that govern the marketing of certain dairy products. The plaintiffs in Civil Action No. 90–222J, are suing the United States Secretary of Agriculture ("the Secretary") and the New York Commissioner of Agriculture ("the Commissioner") on the grounds that certain administrative regulations promulgated by defendants which govern the sale of milk in Western New York violate the Commerce Clause of the United States Constitution, the New York Agriculture and Market Law, the U.S. Agricultural Marketing Agreement Act of 1937, and the Administrative Procedure Act. The plaintiff in Civil Action No. 90–236J is suing the Secretary on the ground that certain administrative regulations that he promulgated which govern the sale of milk in Western New York violate the Commerce Clause of the United States Constitution, the U.S. Agricultural Marketing Agreement Act of 1937, and the Administrative Procedure Act. Because of the similarity of the legal issues raised, the Court granted the Secretary's motion to consolidate.

## II. Background

The milk industry is subject to extensive regulation by the Secretary of Agriculture. The need for this regulatory scheme is a function of two conditions inherent in the milk industry. First, dairy cows produce more milk in the spring "flush" season than in the winter or fall. Second, raw milk has essentially two end uses: either as fresh fluid milk or for use in manufactured products such as cheese or butter. Milk that is sold for fluid use brings a higher price than milk sold for use in manufactured products. During the Depression, the combination of these two conditions, together with the general drop in commodity prices, led to destabilizing competition among dairy farmers ("producers"). Such competition threatened the continued supply of fresh milk.

Congress responded by enacting the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601 *et seq.* ("the Act"), which empowers the Secretary to promulgate milk market orders to curb destabilizing competition by establishing a uniform price for all producers in an area. The milk market orders also divide milk into different classes, depending upon the ultimate use to which the milk will be put, and require milk purchasers ("handlers") to pay a higher total price for milk that will be sold as fluid milk ("class I milk") than for milk that will be used in manufactured products such as yogurt and cottage cheese ("class II milk"), or as cheese and butter ("class III milk"). However, producers (dairy farmers) receive the same price for their milk, whether it is sold for fluid consumption or used in manufactured products.

This result is accomplished by operation of the producer settlement fund (the Fund). A handler who retails its milk for fluid or class I purposes must pay the difference between the price it paid to the producer and the price it received for the fluid milk into the Fund. The Market Administrator distributes the money in the Fund to handlers who sold their milk for use in manufactured products, if the handler paid the producer a price exceeding that which the handler obtained when it sold the milk. This equalization process is designed to assure orderly conditions in the milk market. *See Lehigh Valley Farmers v. Block,* 829 F.2d 409, 411–12 (3d Cir.1987).

The instant cases stem from the interaction of several different milk marketing orders and certain regulatory schemes enacted by the legislatures of the states of New York and Pennsylvania. Plaintiffs allege that the Federal Market Administrator in New York, who administers Milk Market Order # 2, and the New York State Commissioner of Agriculture, who administers a state regulatory program, have imposed surcharges or "compensatory" payments on them that are illegal. Plaintiffs contend that these compensatory payments are improper because they have already paid a higher price than the minimum price because of the operation of the Pennsylvania Milk Marketing Board, and that these surcharges discriminatorily burden their sale of goods in New York.

The cases are now before this Court on the Secretary's and the Commissioner's motions to dismiss. I will address the Secretary's motion first and then consider the arguments propounded by the Commissioner.

## III. The Secretary's Motion to Dismiss

In his motion to dismiss, the Secretary attacks the plaintiffs' ability to bring these actions in federal court. Specifically, the Secretary contends that Sani–Dairy and Milk Marketing are "handlers" who must exhaust administrative remedies before seeking judicial review of an allegedly illegal regulation. The Secretary also contends that the individual dairy farmers are precluded from seeking judicial review of the allegedly objectionable regulations by the Agricultural Marketing Agreement Act of 1937.

After reviewing the briefs and the applicable case law, the Court has concluded that the handlers may not maintain this action because they have failed to exhaust administrative remedies. The Court, however, disagrees with the Secretary's further contention that the dairy farmers ("producers") are precluded from seeking

judicial review by the terms of the Agricultural Marketing Agreement Act. The Secretary's motion to dismiss will therefore be granted in part and denied in part.

### A.

■ The law is well settled that a handler must exhaust administrative remedies before obtaining judicial review of the Secretary's actions. *See Block v. Community Nutrition Institute,* 467 U.S. 340, 346, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984); *United States v. Ruzicka,* 329 U.S. 287, 291–293, 67 S.Ct. 207, 209–210, 91 L.Ed. 290 (1946). The Act allows handlers to obtain administrative review by filing a written statement with the Secretary, 7 U.S.C. § 608c(15)(A), and requires the Secretary to give the handler an opportunity to be heard before ruling on a prayer for relief from the underlying administrative action. *Id.* Once the Secretary issues a ruling, it becomes final, and is subject to review by the federal district courts. *Id.,* 7 U.S.C. § 608c(15)(B). The Supreme Court has clearly and unequivocally held that a handler must exhaust these remedies before attempting to obtain judicial review of the Secretary's actions. *Block v. Community Nutrition Institute,* 467 U.S. at 346, 104 S.Ct. at 2454; *Ruzicka v. United States,* 329 U.S. at 292, 67 S.Ct. at 209.

Sani–Dairy concedes that the law is well settled that handlers must exhaust administrative remedies before they can obtain judicial review. (Brief for Sani–Dairy at 11). However, Sani–Dairy attempts to avoid the inevitable consequences of this well-settled doctrine—dismissal—by arguing that exhaustion of remedies should not be required where administrative review would be "futile". (Brief for Sani–Dairy at 12).

In *Community Nutrition,* the Supreme Court held that consumers cannot seek judicial review of the Secretary's orders because the ensuing litigation "would effectively nullify Congress' intent to establish an 'equitable and expeditious procedure for testing the validity of [the Secretary's] orders....'" 467 U.S. at 348, 104 S.Ct. at 2455 (citations omitted). Sani–Dairy contends that the Supreme Court's concern for preserving an equitable and expeditious procedure for testing the validity of the Secretary's orders requires this Court to excuse its failure to exhaust administrative remedies "[b]ecause the procedure available to Sani is neither equitable nor expeditious." (Sani–Dairy's Brief at 11). The cited language from the *Community Nutrition* opinion, quoting the legislative history of the Act, cannot possibly support Sani–Dairy's contention, which directly contradicts the plain unambiguous language of the Act. *See Consumer Product Safety Commission v. GTE Sylvania Corp.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("Absent a clearly expressed legislative intention to the contrary [the language of the statute] must ordinarily be regarded as conclusive.")

Contrary to Sani–Dairy's suggestion, the Supreme Court's opinion in *Community Nutrition* demonstrates the need for judicial deference to the Secretary's "complex and delicate administrative scheme." Moreover, the Court specifically cautioned against allowing handlers to bypass administrative review. The Court noted that handlers are also consumers and that if consumers were allowed to sue the Secretary, handlers would be able to seek judicial review without first exhausting their administrative remedies. Thus, when the language that Sani–Dairy relies upon is examined in the context of the entire opinion, it is clear that Sani–Dairy must exhaust administrative remedies before seeking judicial review.

■ Most importantly, the statute itself requires exhaustion of remedies. The exhaustion requirement has not been judicially imposed; it is a statutory jurisdictional prerequisite. Accordingly, it "may not be dispensed with by a judicial conclusion of futility." *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). "Although judicially developed exhaustion requirements might be waived for discretionary reasons by courts, statutorily created exhaustion requirements bind the parties and the courts." *Saulsbury Orchard & Almond Processing v.*

*Yeutter*, 917 F.2d 1190, 1194 (9th Cir.1990). Where exhaustion is a statutory requirement, a party's failure to exhaust deprives the court of jurisdiction. *Id.* Thus, this Court is without jurisdiction to hear Sani-Dairy's complaint.

### B.

■ The Secretary also argues that the Act precludes the individual producers and Milk Marketing, Inc. ("MMI") from seeking judicial review of the marketing orders. These contentions are more problematic for two reasons. First, the law governing the producers' ability to seek judicial review is not well settled. In fact, there is a conflict in the circuits as to whether the Act precludes producers from seeking judicial review. *Compare Farmers Milk Union Cooperative v. Yeutter*, 930 F.2d 466 (6th Cir.1991) *with Pescosolido v. Block*, 765 F.2d 827 (9th Cir.1985). This Circuit has not yet considered this issue. The second complication involves the proper categorization of MMI. It is unclear whether a cooperative should be treated as a group of producers or as a handler under the Act. This Court will address each question in turn.

Although the Act specifically provides for the producers' involvement in the promulgation of marketing orders, it is silent on the producers' ability to obtain judicial review of the Secretary's orders and regulations. The producers therefore rely on section 702 of the Administrative Procedure Act which provides a presumption in favor of judicial review: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. This presumption is, however, tempered by section 701(a)(1) which withdraws the right to judicial review if the statute governing the agency action "preclude[s] judicial review." 5 U.S.C. § 701(a)(1). The statute in the instant case, the Agricultural Marketing Agreement Act of 1937, does not expressly forbid judicial review.

Early in the history of the Act, the Supreme Court held that producers are not statutorily precluded from seeking judicial review. *Stark v. Wickard*, 321 U.S. 288, 306–310, 64 S.Ct. 559, 569–571, 88 L.Ed. 733 (1944). The Court held that "the silence of Congress as to judicial review, is, at any rate in the absence of an administrative remedy, not to be construed as a denial of authority to the aggrieved person to seek appropriate relief in the federal courts in the exercise of their general jurisdiction." *Stark v. Wickard*, 321 U.S. at 309, 64 S.Ct. at 571. The Court thus held that producers may seek judicial review of the Secretary's order. The Court, however, tempered its ruling by requiring that the "producers have such a personal claim as justifies judicial consideration." *Id.* at 305, 64 S.Ct. at 568. In other words, the Court held that the producers are not statutorily precluded from seeking judicial review, but that they must also be able to demonstrate the "injury-in-fact" component of traditional standing to obtain judicial review.

The Secretary does not argue that the producers in the instant case cannot show the injury-in-fact required by traditional notions of standing. On the contrary, he concedes that because the orders at issue force Sani-Dairy to pay a supplemental charge, the producers, in turn, receive less money for their milk. (Secretary's Brief at 11). The Secretary instead contends that the producers are statutorily precluded from seeking judicial review because the substantive question raised is a "handler issue" that should be resolved administratively via a handler petition. (*Id.*) He contends that the Supreme Court's subsequent opinion in *Community Nutrition, supra*, calls for an extremely narrow reading of *Stark v. Wickard, supra*, and cites one circuit court case that supports his position. *See Pescosolido v. Block*, 765 F.2d 827 (9th Cir.1985).

In the absence of any statement from the Court of Appeals for the Third Circuit[1] or

---

**1.** The Secretary argues that the Third Circuit's opinion in *Marchezak v. McKinley*, 607 F.2d 37 (3d Cir.1979), supports his contention that the producers are statutorily precluded from obtain-

a clear consensus among the other Courts of Appeals, this Court writes on a clean slate.

I have reviewed the Supreme Court's opinion in *Community Nutrition* and the two Courts of Appeals cases interpreting that decision. *See Pescosolido v. Block,* 765 F.2d 827 (9th Cir.1985) and *Farmers Milk Union v. Yeutter,* 930 F.2d 466 (6th Cir.1991). I conclude, as did the Sixth Circuit and one judge on the *Pescosolido* panel, that *Community Nutrition* does not undermine the Supreme Court's opinion in *Stark v. Wickard,* which held that producers may obtain judicial review of the Secretary's orders. Indeed, I believe that the Secretary's position is based upon a faulty analytical framework that incorrectly incorporates one element of traditional standing—injury in fact—into the totally independent analysis governing the statutory preclusion question. When the opinion in *Community Nutrition* is closely examined, it is evident that the Supreme Court did nothing to alter the prior law regarding the producer's right to obtain judicial review of the Secretary's orders.

In *Community Nutrition,* the Supreme Court recognized that Congress authorized producers to participate in the regulatory process. The Supreme Court stated that

the preclusion issue does not only turn on whether the interests of a particular group are implicated. Rather the preclusion issue turns ultimately on whether Congress intended for that class to be relied upon to challenge agency disregard of the law. The structure of this Act indicates that Congress *intended only producers* and handlers, and not consumers, *to ensure the statutory objective would be realized.*

ing judicial review. Contrary to the Secretary's argument, *Marchezak* did not hold that the producers are *statutorily precluded* from obtaining judicial review, but instead held that the producers in that case could not demonstrate the injury in fact component that is a prerequisite to standing. *Marchezak* is therefore inapposite to the question currently before this Court.

2. The courts that have held that *Community Nutrition* narrowed or eviscerated *Stark* have relied upon this statement to support their con-

*Community Nutrition,* 467 U.S. at 347, 104 S.Ct. at 2454 (emphasis added) (citations omitted). The Court quite emphatically recognized that Congress *intended* producers to participate in the regulatory scheme. The language cited above specifically afforded the producers a role in safeguarding the objective of the Agricultural Marketing Agreement Act, which is stabilizing the price that producers receive for their goods. Inherent in the role of ensuring that that goal is met is the ability to challenge the Secretary's actions in court.

Later in the *Community Nutrition* opinion, however, the Supreme Court held that *consumers,* not producers, are statutorily precluded from obtaining judicial review. The Court stated that "Congress intended that judicial review of marketing orders issued under the Act *ordinarily* be confined to suits brought by handlers ..." 467 U.S. at 348, 104 S.Ct. at 2455.[2] (emphasis added). This broad statement seems at odds with the Court's earlier observations regarding the appropriate role of producers in ensuring that the objectives of the laws are achieved, and with the Court's opinion in *Stark v. Wickard.* Reconciling these two contradictory statements in a vacuum would be a solomonic task indeed. However, it is not necessary to do so in a vacuum. In *Community Nutrition,* the Supreme Court reviewed the analysis necessary for determining whether statutory language or legislative history indicates congressional intent to overcome the presumption in favor of judicial review. A review of the relevant factors in this case compels the conclusion that producers are entitled to obtain judicial review. *See Pescosolido v. Block,* 765 F.2d at 834 (Wiggins, J., concurring).

clusion that after *Community Nutrition,* only handlers may obtain judicial review. I believe this analysis is faulty for two reasons. First, it fails to give proper weight to the fact that the Supreme Court's statement is modified by the word "ordinarily". Second, it fails to reconcile this statement with the earlier language that clearly recognized that the statute provides for producer participation in the regulatory scheme and that the regulatory scheme was created to protect producers' prices.

There is absolutely nothing in either the language of the Act or its legislative history to suggest that producers are not entitled to judicial review of the Secretary's orders. *See Pescosolido v. Block,* 765 F.2d at 834 (Wiggins, J., concurring). Moreover, the Act clearly contemplates that producers would participate in the regulatory process. *Community Nutrition,* 467 U.S. at 347, 104 S.Ct. at 2454; *Pescosolido,* 765 F.2d at 834; *Farmers Union Milk Marketing Co-op. v. Yeutter,* 930 F.2d at 472-474. However, the Act does not specifically set forth an administrative remedy for aggrieved producers. The Secretary contends that because the *Community Nutrition* opinion lauds the scheme of administrative review set forth in the Act, this Court should force the producers to rely upon the handler, Sani–Dairy, to exhaust administrative remedies before they can obtain judicial review.

The Secretary's argument is untenable. The purpose of the Act is to "raise producer prices." *Community Nutrition,* 467 U.S. at 342, 104 S.Ct. at 2452 *quoting* S.Rep. No. 1011, 74th Cong., 1st Sess. 3 (1935); *see also Farmers Union,* 930 F.2d at 473-474. This means that the Act is primarily designed to protect the interests of producers rather than the interests of handlers. Because the producers are the statutorily favored class, it would be anomalous to force them to wait for handlers to exhaust administrative remedies before they could sue the Secretary in Court. Like the Sixth Circuit, I believe "that allowing review in suits of this type would enhance, rather than undermine the statutory purpose." *Farmers Union,* 930 F.2d at 474 (citations omitted).

Finally, congressional intent may also be inferred from contemporaneous judicial construction and congressional acquiescence in it. *Community Nutrition,* 467 U.S. at 349, 104 S.Ct. at 2455. Congress has for the past 40 years, acquiesced in the *Stark v. Wickard* opinion, which holds that producers are not statutorily precluded from obtaining judicial review. *See Pescosolido,* 765 F.2d at 834 (Wiggins, J., concurring). Significantly, after *Stark,* Congress continued to acquiesce in lower court decisions that allowed producers to seek judicial review of the Secretary's orders. *See Suntex Dairy v. Bergland,* 591 F.2d 1063, 1065-1067 (5th Cir.1979), *rehearing denied,* 670 F.2d 181, *cert. denied,* 459 U.S. 826, 103 S.Ct. 59, 74 L.Ed.2d 62 (1982); *Dairylea Cooperative, Inc. v. Butz,* 504 F.2d 80, 82 (2nd Cir.1974); *Lehigh Valley Farmers v. Block,* 640 F.Supp. 1497 (E.D.Pa.1986), *aff'd on other grounds,* 829 F.2d 409 (3d Cir.1987); *Jones v. Bergland,* 456 F.Supp. 635 (M.D.Pa.1978). Thus, I conclude that neither the Supreme Court's opinion in *Community Nutrition* nor the general jurisprudence regarding statutory preclusion supports the Secretary's position that the producers may not obtain judicial review.

## C.

I turn finally to the Secretary's contention that MMI, a cooperative, is also statutorily precluded from bringing this action. The Secretary argues that "[b]ecause plaintiff, MMI, stands in the exact same position as plaintiff Sani–Dairy, and seeks the same relief, the grounds for dismissal of the MMI Complaint are the very same grounds [that mandate the dismissal of] the complaint of plaintiff Sani–Dairy." (Motion to Dismiss ¶ 9). The Secretary has not filed a separate brief in support of its motion to dismiss MMI, but instead relies upon the brief filed in support of its motion to dismiss Sani–Dairy's complaint.

The Secretary is incorrect in his assertion that MMI stands in the "exact same position as ... Sani–Dairy." Sani–Dairy is a handler, while MMI is a cooperative that sells dairy products to Sani–Dairy. Cooperatives are not mentioned in the Act. The Secretary apparently assumes that MMI should be treated as a handler. MMI, on the other hand, apparently assumes that it should be treated as a producer. Neither side has briefed this issue.

The parties' neglect of this issue notwithstanding, the Court must first determine whether MMI should be categorized as a handler or as a producer before it can determine whether the Act precludes MMI

from obtaining judicial review of the Secretary's order. *See United States v. United Dairy Farmers Cooperative Ass'n*, 611 F.2d 488 (3d Cir.1979); *Smyser v. Block*, 760 F.2d 514 (3d Cir.1985); *Lehigh Valley Farmers v. Block*, 640 F.Supp. 1497 (E.D.Pa.1986) *aff'd* 829 F.2d 409 (3d Cir. 1987). Unfortunately, the record is not adequately developed to allow the Court to rule on this issue.

The Act itself does not define either the term "handler" or "producer" with great specificity. However, the Secretary has promulgated extensive regulations defining both terms. *See* 7 C.F.R. §§ 1036.9; 1036.12 (1991). The Third Circuit has relied upon these regulations to determine whether a particular cooperative should be considered a handler or a producer under the Act. *See United States v. United Dairy Farmers Cooperative Ass'n*, 611 F.2d 488, 490–491. It has also held that "[c]ooperatives, which process and market the milk of their member producers ... are handlers under the Act." *Smyser v. Block*, 760 F.2d at 517.

Whether MMI should be considered a handler or a producer is a fact-bound question. The record, as it is now developed, contains very little information regarding MMI's activities. The only description of MMI appears in MMI's brief in opposition to the Secretary's motion for dismissal and states that MMI "represents over 100 producers whose milk is directed or consigned to the plant of Sani–Dairy (handler) at Johnstown, Pennsylvania." (MMI's Brief in Opposition at 1). The Secretary has provided absolutely no description of MMI's activities. Without a more thorough understanding of MMI's business, the Court cannot determine whether MMI should be treated as a handler or as a producer. *See Lehigh Valley Farmers v. Block*, 640 F.Supp. at 1500 (district court granted Secretary's motion to dismiss com-

plaints of some cooperatives, finding that they were handlers under the Act, while denying Secretary's motion to dismiss complaints of other cooperatives, because they were producers under the Act), *aff'd on other grounds* 829 F.2d 409 (3d Cir.1987).

Because the case is currently before the Court on the Secretary's motion to dismiss, the Court must view the complaint and the motion in the light most favorable to MMI. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3rd Cir.1987). The record contains no evidence that MMI is engaged in activities normally undertaken by a handler. Accordingly, the Court cannot rule on the Secretary's motion to dismiss MMI's complaint at this time.

## IV. The Commissioner's Motion To Dismiss

■ I now turn to the Commissioner's motion to dismiss the complaint in Civil Action No. 90–222J. The Commissioner offers several theories to support his motion to dismiss the case against him. In a memorandum of law, short on both analysis and cited authority, the Commissioner claims that: (1) this Court lacks subject matter jurisdiction; (2) that it cannot assert personal jurisdiction over him; (3) that venue is improper; (4) that the complaint fails to state a claim upon which relief can be granted; (5) that plaintiffs have failed to join necessary parties; (6) that plaintiffs have failed to exhaust administrative remedies; and, (7) and that the suit is barred by sovereign immunity.

I will address at one time the Commissioner's arguments (1), (4) and (6) above because all are based essentially on the same theory of law: that the case must be dismissed for failure to exhaust administrative remedies.[3]

As discussed above, Sani–Dairy but not the individual dairy farmers, must exhaust administrative remedies before seeking judicial review of the federal market orders.

---

3. The Commissioner also contends that the Court is without subject matter jurisdiction because the complaint does not adequately identify the basis on which plaintiffs wish to invoke the jurisdiction of this Court. This argument is patently absurd. The complaint states that the Court has jurisdiction pursuant to 28 U.S.C.

§§ 1331, 1337. The plaintiffs are therefore invoking the Court's general federal question jurisdiction and its commerce jurisdiction. Contrary to the Commissioner's assertion, the complaint asserts that the marketing order at issue violates the Commerce Clause of the United States Constitution.

The earlier discussion was, however, limited to the plaintiffs' ability to sue the *Secretary* under *federal law*. It did not discuss whether either group of plaintiffs must exhaust administrative remedies before suing the Commissioner for his administration of the New York State market orders at issue. Unfortunately, the Commissioner has not adequately briefed the issue of the availability of judicial review.

In support of his assertion that plaintiffs must seek administrative review, the Commissioner cites a Supreme Court case from 1934, *Hegeman Farms Corp. v. Baldwin*, 293 U.S. 163, 172, 55 S.Ct. 7, 10, 79 L.Ed. 259 (1934). *Hegeman Farms* does not support the Commissioner's contention. In that case, the Supreme Court stated only that plaintiffs *should* exhaust administrative remedies before seeking judicial review. *Id.* Moreover, that statement itself was merely dictum as the case was decided on the separate ground that the challenged order was well within the state's police power. *Id.* at 170–171, 55 S.Ct. at 9–10.

However, there is support for the Commissioner's argument in the statutes governing the availability of judicial review of the Commissioner's orders. Section 36–a of the New York Agriculture and Markets Law provides that "[a]ny person subject to a rule or order of the commissioner … may file a written petition with the commissioner stating that any such rule or order or provision thereof or any obligation imposed in connection therewith is not in accordance with law and praying for the revocation or modification thereof." N.Y.Agric. & Mkts. § 36–a (McKinney 1991). Thus, both handlers and producers may seek administrative review of the Commissioner's orders. Section 36–a also provides that the complaining party shall be given an opportunity for a hearing. The Commissioner's decision becomes final "unless within thirty (30) days after its issuance one of the parties shall institute a review proceeding for review thereof." *Id.* In other words, any party may seek administrative review, and then seek judicial review of the administrative determination. Thus, all plaintiffs may obtain administrative review. That does not, however, answer the further question of whether plaintiffs must exhaust administrative remedies before seeking judicial review.

Section 37 of the Agriculture & Market Act governs the availability of judicial review of the Commissioner's orders. It states that "(a) decision by the commissioner rendered as provided in the preceding section shall be subject to review in the manner provided by Article 78 of the Civil Practice Law and Rules." N.Y.Agric. & Mkts.Law § 37 (McKinney 1991). Article 78 is the codification of several common law writs that were available to challenge the actions of New York State judicial and administrative officers. N.Y.Civ.Prac.L. & R. § 7801. Article 78 provides, in pertinent part, that

> (e)xcept where otherwise provided by law, a proceeding under this article shall not be used to challenge a determination: (1) which is *not final* or *can adequately be reviewed by appeal to a court or to some other body or officer* or where the body or officer making the determination is expressly authorized by statute to rehear the matter upon petitioner's application unless the determination to be reviewed was made upon rehearing or a rehearing has been denied, or the time within which the petitioner can procure a rehearing has elapsed.

N.Y.Civ.Prac.L. & R. § 7801 (McKinney 1991) (emphasis added).

Article 78 therefore precludes a party from seeking judicial review of an administrative action before exhausting administrative remedies. Indeed, the practice commentary following the statute states that subdivision (1) of Article 78 "codif[ies] and expan[ds] the administrative law doctrine of exhaustion of remedies." N.Y.Civ. Prac.L. & R. 7801.8, *see also, Cadplaz Sponsers, Inc. v. Cadman Towers, Inc.*, 84 Misc.2d 961, 376 N.Y.S.2d 805, 809 (1975) (parties must exhaust administrative remedies). Moreover, New York courts have held that Article 78 is the proper vehicle for challenging the constitutionality of administrative decisions. *R & G Outfitters, Inc. v. Bouchard*, 101 A.D.2d 642, 475 N.Y.S.2d 549, 550 (1984) ("an article 78

proceeding is the proper method for determining whether a statute in a specific instance has been applied in an unconstitutional manner"); *First Dist. Dental Soc. v. Sencer,* 116 Misc.2d 528, 455 N.Y.S.2d 734, 736 (1982) (same); *Application of Covenant Community Church, Inc.,* 111 Misc.2d 537, 444 N.Y.S.2d 415, 418 (1981) (same).

Thus, it appears that plaintiffs must follow the strictures of Article 78 in their challenge to the New York State Milk Order. There are, however, two issues that the Court must consider before reaching this conclusion. The first is the applicability of Article 78, which is arguably a procedural rule, to a proceeding in a federal court sitting in the Western District of Pennsylvania.

■ Although Article 78 is codified in the section of the New York Code that deals with court procedures, it is also referenced in the New York statute that governs the substantive availability of judicial review of the Commissioner of Agriculture's decisions. *See* N.Y.Agric. & Mkts. Law § 37 (McKinney's 1991). Thus, the substantive law of judicial review is controlled by the restrictions in Article 78. In other words, the requirement of exhaustion of remedies is substantive.

The second wrinkle in enforcing Article 78's mandate that plaintiffs first exhaust administrative remedies appears in the earlier referenced practice commentary that follows the statute. The commentary notes that "the most cursory review of cases, however, will reveal hundreds, indeed thousands of cases where decisions have been reviewed in patent violation of this section." N.Y.Civ.Prac.L. & R. C7801:8 (McKinney 1991). The commentary concludes that the requirement of exhaustion is "precatory and is at best a counsel of caution." *Id.* The commentary therefore suggests that a court reflect upon the factors set forth in § 7801(1) in determining whether to retain jurisdiction, using "measured discretion and judicial restraint" as guideposts. *Id.*

I believe that the concepts of measured discretion and judicial restraint counsel dismissing the complaint against the Commissioner at this time. Plaintiffs already have an administrative petition pending before the Commissioner. (Plaintiff's Brief in Opposition at 10). Unlike the federal statutory scheme, the New York State law allows both the individual plaintiffs and Sani–Dairy to pursue administrative remedies. Given the complexity of the issue, the availability of administrative relief, and the expertise of the Commissioner, I believe it would be prudent to allow the administrative petition to go forward. Moreover, federalism counsels this Court to be wary of allowing plaintiffs to sue an official of the State of New York in a federal court in Pennsylvania. The Court will therefore grant the Commissioner's motion to dismiss.

■ Moreover, even assuming that the law does not require the plaintiffs to exhaust administrative remedies, the Court must still grant the Commissioner's motion to dismiss because venue is improper. *See* 28 U.S.C. § 1406(a). Section 1391 of Title 28 of the United States Code provides that any civil action brought pursuant to this Court's federal question jurisdiction must be brought where (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found, if there is not a district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

Venue obviously does not lie in this district pursuant to section 1391(b)(1); none of the defendants reside in the Western District of Pennsylvania. Similarly, none of the defendants can be found in this judicial district. Plaintiffs, however, contend that the claim arose in the Western District of Pennsylvania and that this is the proper venue for this action. This argument is without merit.

"The general rule is that 'the place where the claim arose is the situs of events important to the case.'" *Leech v. First Commodity Corporation of Boston,* 553 F.Supp. 688, 690 (W.D.Pa.1982) (citations omitted). Thus, this Court must determine whether the events that gave rise to this

case actually occurred. This Court must also consider the practical implications of its determination in terms of the availability of witnesses and records. *Id.* This litigation is the result of compensatory payments plaintiffs were forced to make when they sold milk in the State of New York. The payments to which plaintiffs object are made in New York as a result of business transacted in New York. Moreover, many of the witnesses and, presumably, the administrative records to the extent that they exist are located in New York. Perhaps most significantly, this case involves questions of New York law that are not within the usual experience of this Court. Accordingly, the proper venue for this action is New York and not the Western District of Pennsylvania.

The Court will therefore grant the Commissioner's motion to dismiss because the plaintiffs have failed to exhaust administrative remedies and because venue is improper. In light of these conclusions, it is unnecessary to reach the Commissioner's remaining arguments regarding the Court's inability to assert personal jurisdiction over him and sovereign immunity under the eleventh amendment.