765 F.2d 827
 Carl A. PESCOSOLIDO, Marvin Wilson, and Oleah Wilson,
partners doing business under the names of Canal Ranch,
Madera 240 Ranch, and Panoche Ranch, and on Behalf of
themselves and all others similarly situated, Plaintiffs-Appellants,
v.
John BLOCK, Secretary of Agriculture of the United States,
and Mildred Thumian Administrator of Agriculture
Marketing Service, United States
Department of Agriculture,
Defendants-Appellees.
 No. 84-1820.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 16, 1985.
Decided July 9, 1985.
 
 Linda A. Netzer, Victor M. Epport, Epport, Kaseff & Mirman, Beverly Hills, Cal., for plaintiffs-appellants.
 Aaron B. Kahn, Atty., U.S. Dept. of Agriculture, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before WALLACE and WIGGINS, Circuit Judges, and WILLIAMS,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 Carl Pescosolido, Marvin Wilson, and Oleah Wilson (the Growers) brought this action under the Agricultural Marketing Agreement Act of 1937 (the Act), 7 U.S.C. Secs. 601-624, seeking to compel the Secretary of Agriculture (the Secretary) to terminate Federal Marketing Order No. 907, 7 C.F.R. Part 907 (1984) (Order 907), and also seeking declaratory relief and damages under the Act. Jurisdiction in the district court was alleged under the Mandamus Act, 28 U.S.C. Sec. 1361, the Administrative Procedure Act, 5 U.S.C. Sec. 702, and 28 U.S.C. Sec. 1331. The district court held that the damages claim was barred by sovereign immunity; the Growers do not appeal that holding. The district court also found no jurisdiction under the Mandamus Act, and that the Growers lacked standing to bring these claims outside the administrative remedies prescribed by the Act, see 7 U.S.C. Sec. 608c(15)(A). We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 2
 * The Growers are partners doing business under the names Canal Ranch, Madera 240 Ranch, and Panoche Ranch. They allege that they are in the business of producing navel oranges for commercial sale, and they seek to represent a class of similar producers in this suit against the Secretary seeking injunctive and declaratory relief. Their complaint alleges that Order 907, promulgated under the Act and which regulates the marketing of oranges in Arizona and parts of California, fails to achieve and maintain "parity" prices, as defined in 7 U.S.C. Sec. 1301(a)(1), for navel orange producers. Under Order 907, the handling of navel oranges in the geographic area it covers is regulated by an Administrative Committee that determines, among other things, the percentage of the total crop that may be made available for commercial shipment by handlers. Producers of such oranges are thereby precluded from marketing all the navel oranges they grow.
 
 
 3
 The Act was passed in response to unstable marketing conditions during the Depression, with an objective of helping farmers obtain a fair value for their agricultural products. See, e.g., Zuber v. Allen, 396 U.S. 168, 174-76, 90 S.Ct. 314, 318-19, 24 L.Ed.2d 345 (1969). Shortly after its enactment, the Supreme Court upheld market regulation under the Act against constitutional challenges. See United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939). Marketing orders such as the one in controversy here may be issued only after the Secretary complies with the Act's detailed promulgation procedures. The Secretary must first give notice and an opportunity for a hearing upon any proposed order. See 7 U.S.C. Sec. 608c(3). After a hearing, if the Secretary finds "that the issuance of such order ... will tend to effectuate the declared policy" of the Act, id. Sec. 608c(4), he may submit the proposed order to producers for their approval. An order regarding citrus fruits does not generally become effective unless handlers of at least eighty percent (80%) of the oranges, and producers of two-thirds (66 2/3%) of the oranges or two-thirds (66 2/3%) of the producers approve of the Secretary's determination. Id. Sec. 608c(8).
 
 
 4
 The Growers assert that the central purpose of the Act is affirmatively to establish parity prices, citing 7 U.S.C. Sec. 602(1), which states that one of its purposes is
 
 
 5
 to establish and maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish, as the prices to farmers, parity prices as defined by section 1301(a)(1) of this title.
 
 
 6
 The Growers contend that over the past thirteen years, Order 907 has failed to obtain parity prices for them in all but two instances. As a result of this failure, the Growers claim that the Secretary has violated section 8c(16)(A) of the Act, 7 U.S.C. Sec. 608c(16)(A), which provides that:
 
 
 7
 [t]he Secretary of Agriculture shall, whenever he finds that any order issued under this section, or any provision thereof, obstructs or does not tend to effectuate the declared policy of this chapter, terminate or suspend the operation of such order or such provision thereof.
 
 
 8
 In October 1980, handlers Sequoia Orange Company, Inc. and Exeter Orange Company, Inc., and the three partnerships owned by the Growers filed a petition with the Department of Agriculture (the Department) challenging the validity of Order 907, as provided by the administrative remedy provisions of 7 U.S.C. Sec. 608c(15)(A). The Growers are also officers of Sequoia Orange Company, Inc. Section 608c(15)(A) provides for an initial hearing on a petition before the Secretary, who then must issue a ruling on the merits. Id. If the ruling is unfavorable, the petitioner may seek review of the Secretary's ruling in the district court. Id. Sec. 608c(15)(B). Because the remedy provisions of section 608c(15)(A) are only applicable to "handlers," however, the three partnerships were subsequently dismissed from the administrative petition because they were "producers" under the Act. See id. Sec. 608c(13)(B).
 
 
 9
 After the Department filed its motion to dismiss the administrative petition, the Growers brought this action in district court raising similar claims. They seek an order compelling the Secretary to terminate Order 907 and a declaration of their rights, alleging injury to their goodwill and competitive ability as the result of the continued enforcement of Order 907's marketing restrictions on their produce. The Secretary then moved for dismissal. The motion was heard by a magistrate, who recommended dismissal of the damages claims, but denial of the motion with respect to injunctive relief. The district court rejected the latter recommendation and dismissed all claims. The district court held (1) that there was no mandamus jurisdiction, (2) that the Growers lacked standing, and (3) that the class the Growers sought to represent would have an adequate administrative remedy under 7 U.S.C. Sec. 608c(16)(B), which provides for termination of a marketing order by a vote of a majority of affected producers.
 
 II
 
 10
 We review the district court's first holding, lack of mandamus jurisdiction under 28 U.S.C. Sec. 1361, de novo. See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (McConney ). Mandamus jurisdiction exists only when there is "a duty owed to the plaintiff." 28 U.S.C. Sec. 1361. "[I]t is appropriate only when the plaintiff's 'claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt.' " Nova Stylings, Inc. v. Ladd, 695 F.2d 1179, 1180 (9th Cir.1983), quoting Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir.1970). Mandamus is not available to review discretionary acts, and "[t]he availability of an adequate alternative remedy will also preclude [such] review." 695 F.2d at 1180. Mandamus is also generally unwarranted when the statute prescribes a specific method of review. Id. at 1180-81.
 
 
 11
 The Growers contend that 7 U.S.C. Sec. 602(1) explicitly commands the Secretary to achieve parity prices, and that if any marketing order fails to achieve them, he must terminate the order under 7 U.S.C. Sec. 608c(16)(A). Because parity prices have only been achieved in two instances over the past thirteen years, they argue that the Secretary should be compelled to terminate Order 907 and instead permit untrammeled competition in their markets.
 
 
 12
 It is clear that one of the central purposes of the Act is to establish and maintain parity prices for farmers. See, e.g., Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 138, 83 S.Ct. 1210, 1215, 10 L.Ed.2d 248 (1963). Unlike the fixed minimum prices which must be established for milk, however, see 7 U.S.C. Sec. 608c(5)(A), the Secretary is not empowered to fix prices for any other commodities covered by the Act. Instead, he may only employ market controls, see id. Sec. 608c(6), in an effort to "effectuate the declared policy of" the Act. Id. Sec. 608c(4).
 
 
 13
 The Growers correctly point out that the parity price is easily determined by a statutory formula. See 7 U.S.C. Sec. 1301. They concede, however, that the Secretary has discretion over the means used to attempt to achieve this goal. Indeed, the clear language of the Act, which permits the issuance of an order if the Secretary finds it "will tend to effectuate the declared policy" of the Act, see id. Sec. 608c(4) (emphasis added), indicates that an order may be valid if it has a tendency to achieve the goal of parity prices. Thus, the statute reflects congressional understanding of the difficulty in achieving any fixed price merely through the use of marketing controls. Instead, "parity" is a goal toward which the Secretary must strive, rather than the process of setting an objective, fixed price. Although the Secretary is commanded by section 608c(16)(A) to terminate any order which "obstructs or does not tend to effectuate" the Act's policy, this command only applies after the Secretary makes findings indicating such a failure.
 
 
 14
 The pivotal question therefore is whether mandamus may be invoked to compel the Secretary to make such findings. The Growers do not come to grips with this issue, but apparently urge that the district court should make its own findings and require termination of the order if necessary. But that alternative is not available to the Growers. In reviewing an order issued after the Secretary has made the appropriate findings, courts are not generally free to examine evidence outside the Secretary's record. E.g., United States v. Mills, 315 F.2d 828, 836 (4th Cir.), cert. denied, 374 U.S. 832, 83 S.Ct. 1874, 10 L.Ed.2d 1054, and 375 U.S. 819, 84 S.Ct. 57, 11 L.Ed.2d 54 (1963). It follows that de novo findings by a district court clearly would be inappropriate.
 
 
 15
 Mandamus in these circumstances would essentially permit the Growers to seek reopening of the proceedings they brought pursuant to the Act that have been finally concluded. Indeed, the Growers' claim for mandamus is essentially a collateral attack on the order of dismissal and is an attempt to evade the statutory procedures. Permitting such an attack would allow future plaintiffs continually to protest the validity of an order even after the statutory procedures have been followed merely by claiming a change of circumstance.
 
 
 16
 If an order is so detrimental to producers' interests, the statute already provides one adequate alternative remedy: a vote of a simple majority of the affected producers will terminate an order. See 7 U.S.C. Sec. 608c(16)(B). This, we observe, is less than the two-thirds majority necessary to approve an order. See id. Sec. 608c(8)(A), (B).
 
 III
 
 17
 The Growers also seek a declaration of their rights under Order 907, attempting to find jurisdiction based upon the review provisions of the Administrative Procedure Act, 5 U.S.C. Sec. 702. Although the district court held that the Growers lacked standing to pursue this claim, we must reexamine this issue in light of the Supreme Court's recent decision in Block v. Community Nutrition Institute, --- U.S. ----, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (Community Nutrition ). First, we must determine whether judicial review outside the statutory scheme of the Act is generally precluded for producers before examining the standing of these particular producers. See id., 104 S.Ct. at 2456-58. This is an issue of law reviewable de novo. McConney, 728 F.2d at 1201.
 
 
 18
 As pointed out earlier, handlers are provided an administrative remedy to challenge market orders under 7 U.S.C. Sec. 608c(15)(A). This is their exclusive method of redress. See United States v. Ruzicka, 329 U.S. 287, 292-95, 67 S.Ct. 207, 209-11, 91 L.Ed. 290 (1946). There is no comparable provision providing for review at the request of producers. Judicial review for producers, however, has nonetheless been permitted in certain limited instances. See, e.g., Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944) (Stark ).
 
 
 19
 In Stark, producers challenged deductions established by the Secretary from the minimum price for milk to which the producers were entitled. The Court held that the deductions injured the producers' "definite personal rights" created by the statute to the minimum price established by the Act, id. at 309, 64 S.Ct. at 570, thus giving them standing. Id. at 305-06, 64 S.Ct. at 568-69. The Court concluded that the statutory scheme implicitly authorized suits by producers in such circumstances. Id. at 309-10, 64 S.Ct. at 570-71.
 
 
 20
 In so holding, however, the Court observed that handlers, who had no financial interest in the deductions, would not have had standing to challenge the Secretary's actions. Id. at 308, 64 S.Ct. at 570. Thus, unless the producers were permitted to seek such review, the Secretary's actions could never be challenged. Judicial review at the request of producers "was therefore necessary to ensure achievement of the Act's most fundamental objectives--to wit, the protection of the producers." Community Nutrition, 104 S.Ct. at 2458. The Court in Stark emphasized, however, that such producer challenges would be permissible only when the Secretary allegedly acted outside his statutorily delegated powers. 321 U.S. at 307, 64 S.Ct. at 569. When the Secretary is acting within his delegated powers, the producers' sole opportunities for protest are the hearing on the proposed order and the opportunity to vote on its approval. Id.
 
 
 21
 Community Nutrition is the Court's most recent pronouncement on the scope of judicial review under the Act. The Court held that consumers were not entitled to bring challenges to market orders, favorably citing Rasmussen v. Hardin, 461 F.2d 595 (9th Cir.), cert. denied, 409 U.S. 933, 93 S.Ct. 229, 34 L.Ed.2d 188 (1972) (Rasmussen ). See 104 S.Ct. at 2454. The Court observed that the Act made no provision for consumer participation in the promulgation of marketing orders, see id. at 2455, unlike the elaborate provisions for producer and handler participation. The Court was concerned that permitting such challenges by consumers "would provide handlers with a convenient device for evading the statutory" administrative remedies. Id. See also Rasmussen, 461 F.2d at 599-600.
 
 
 22
 We believe that Community Nutrition can be interpreted generally to foreclose judicial review sought by anyone other than handlers: "we think it clear that Congress intended that judicial review of market orders issued under the Act ordinarily be confined to suits brought by handlers in accordance with 7 U.S.C. Sec. 608c(15)." 104 S.Ct. at 2456 (emphasis added). Although the case did not involve a producer challenge, the Court did emphasize that the statutory scheme ordinarily presumes that handlers will ensure the Act's objectives. See id. at 2458. The same concerns regarding potential evasion of the administrative remedies established by statute are applicable to producers as well as consumers. To be sure, the Court specifically observed "that Congress intended [for] only producers and handlers ... to ensure that the statutory objectives would be realized." Id. at 2455. Indeed, unlike consumers, producers are active participants in the promulgation of marketing orders. See id. But this alone fails to suggest any congressional intent to permit producer challenges outside the statutorily prescribed administrative remedy absent special circumstances. As we pointed out, Stark recognized that producers will ordinarily help ensure that the Act's objectives are reached by participating in hearings and by exercising their right to approve or repeal market orders in an informed manner.
 
 
 23
 Only one circuit has refused to construe Stark's holding narrowly, permitting general attacks on the merits of an order by producers. See Suntex Dairy v. Bergland, 591 F.2d 1063, 1067 (5th Cir.1979). That holding, however, preceded the Court's broad discussion in Community Nutrition disfavoring judicial review outside the statutory framework. We agree with those circuits which narrowly construe the exception in Stark to avoid evasion of the statute's clear intent to preclude generally such actions. See Marchezak v. McKinley, 607 F.2d 37, 41 (3d Cir.1979) (denying producer review by distinguishing right established by statute in Stark ); Benson v. Schofield, 236 F.2d 719, 723 (D.C.Cir.1956) (same), cert. denied, 352 U.S. 976, 77 S.Ct. 363, 1 L.Ed.2d 324 (1957); United Milk Producers v. Benson, 225 F.2d 527, 529 & n. 5 (D.C.Cir.1955) (same). See also Dairylea Cooperative, Inc. v. Butz, 504 F.2d 80, 83 (2d Cir.1974) (permitting suit by milk producers who claimed unlawful variation from right to uniform pricing dictated by the Act, analogous to Stark ). The Stark exception is limited to situations in which producers claim that some "definite personal right" granted by the statute is being infringed by the Secretary acting outside the scope of his delegated authority, with no handler having standing to protest. Failure to so construe the statute would otherwise leave handlers in the disadvantaged position of being limited to their statutory remedy while producers are free to raise direct challenges in the district court. Such an ironic result cannot reasonably be attributed to any intentions on the part of Congress.
 
 
 24
 Turning to the case before us, the Act nowhere grants producers any "definite personal right" to parity prices for oranges like the minimum prices established for milk at issue in Stark. Nor have the Growers been denied any procedural rights to which they are entitled. See Consolidated-Tomoka Land Co. v. Butz, 498 F.2d 1208, 1210 (5th Cir.1974) (permitting producer suit solely challenging producer referendum procedures used to promulgate market order). The Stark exception, therefore, is inapplicable.
 
 
 25
 The only other plausible exception for permitting judicial review of a producer challenge is suggested by the Court's analysis in Community Nutrition. In denying judicial review by consumers, the Court reasoned that their interests are similar to those of the handlers who do have a right to review and, therefore, consumer interests will be protected by the handlers. See 104 S.Ct. at 2458. Thus, if the producers and handlers interests are substantially dissimilar, the producers arguably might have a right to judicial review. The issue was raised in this case because of the district court's apparent belief that the producers and handlers stand in the same position. The Growers argue that because of the contractual relation between producers and handlers in which handlers compensation is set at a fixed amount for each carton of produce, handlers have less incentive to maximize production due to possible overtime costs. The Growers also assert that a lower percentage of marketable fruit is less onerous to handlers because a handler will be able to secure compensation for shipping fruit to juice plants while the producer would receive almost no return.
 
 
 26
 Assuming without deciding that the Court's reasoning provides a new exception to judicial review, we doubt that these asserted differences are the type of conflicts the Court had in mind. Despite functional differences between handlers and consumers, these differences did not persuade the Court to conclude that the handlers could not ensure achievement of the Act's purposes and sufficiently protect the consumers. The Court stated:
 
 
 27
 Whether handlers would pass on to consumers any savings they might secure through a successful challenge to the market order provisions is irrelevant. Consumers' interest in market orders is limited to lowering the prices charged to handlers in the hope that consumers will then reap some benefit at the retail level.
 
 
 28
 104 S.Ct. at 2458 n. 3. We are not satisfied that this record demonstrates a sufficient difference between the interests of handlers and producers to distinguish this case from the Court's rejection of an alleged conflict between handlers and consumers in Community Nutrition. We conclude that "[h]andlers can therefore be expected to challenge unlawful agency action and to ensure that the statute's objectives will not be frustrated." Id. at 2458 (footnote omitted). Indeed, in contrast to consumers, the power granted to producers by the Act to protect their interests demonstrates a lessened need to rely on handlers. To the extent there is a conflict between handlers and producers, the voting rights of producers, giving them power to approve or repeal an order, ordinarily will protect producers from any injury resulting from such a conflict.
 
 
 29
 Because we conclude that the facts of this case demonstrate no Stark or other exception which would allow judicial review outside the statutory scheme of the Act, we need not pass upon the issue of whether the Growers have standing pursuant to such an exception.[1]
 
 
 30
 AFFIRMED.
 
 WIGGINS, Circuit Judge, concurring:
 
 31
 I concur in the judgment.
 
 
 32
 The court concludes that the plaintiff-appellees, who are producers of navel oranges, may not invoke the mandamus jurisdiction of the district court in support of their claim for a mandatory injunction. I agree. The court also concludes that the producers are not entitled to judicial review of their declaratory relief claim. I respectfully disagree with this latter conclusion. Because the plaintiffs lack standing, I would not reach the broader and more troublesome judicial review issue.
 
 
 33
 The court's reading of Block v. Community Nutrition Institute, --- U.S. ----, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), precludes producers from obtaining judicial review of the Secretary's actions under the Agricultural Marketing Agreement Act (the Act). The Supreme Court considered in Block "whether ultimate consumers of dairy products may obtain judicial review of milk market orders issued by the Secretary of Agriculture (Secretary) under the authority of the Agricultural Marketing Agreement Act of 1937...." Id. 104 S.Ct. at 2452. The Supreme Court held that the Act implicitly precluded suits by consumers.
 
 
 34
 The Supreme Court's language in Community Nutrition does not justify the expansive reading of it given by the court. It certainly does not foreclose producers from judicially challenging marketing orders promulgated under the Act.[1] Reading Community Nutrition to permit judicial review to producers is especially appropriate in view of the Court's holding in Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944), that milk producers could obtain judicial review of their challenge to a milk market order under the Act.
 
 
 35
 Persons who are adversely affected by administrative action may obtain judicial review of their claims unless Congress has withdrawn such review. 5 U.S.C. Sec. 701(a)(1). See Community Nutrition, 104 S.Ct. at 2454. Congress may preclude all judicial review or preclude review only to particular classes, and may do so explicitly or implicitly. Community Nutrition, 104 S.Ct. at 2454. Although persons are presumed to be entitled to judicial review, the presumption may be rebutted by a showing of contrary congressional intent derived from: (1) statutory language; (2) specific legislative history; (3) congressional acquiescence in contemporaneous judicial construction of the statute; (4) "the collective import of legislative and judicial history behind a particular statute"; or (5) the statutory scheme as a whole. Id. at 2456.
 
 
 36
 No congressional intent to deprive producers of judicial review is apparent here. First, the language of the Act does not preclude judicial review to producers. It provides only that handlers subject to marketing orders may seek modification of their orders, and vests the district courts with jurisdiction to consider the Secretary's rulings on such petitions. 7 U.S.C. Sec. 608c(15)(A) & (B). The Act also permits producers and handlers to participate similarly in the creation of marketing orders. E.g., 7 U.S.C. Sec. 608c(8), (9), (12), (16)(B), (19). Second, there appears to be no explicit manifestation in the legislative history of a congressional intent that producers be foreclosed from judicial review of market orders.
 
 
 37
 Third, Congress has acquiesced for 40 years in Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944). The Court held in Stark that milk producers could obtain judicial review of a marketing order. Although the milk marketing order at issue in Stark was different from the order at issue here because it set the minimum prices handlers could pay producers for their milk, Congress has not indicated that its acquiescence in Stark depended on the nature of the marketing order.
 
 
 38
 Finally, the statutory scheme of the Act does not necessarily preclude judicial review to producers.[2] The Court held in Block that the Act's statutory scheme impliedly denied judicial review to consumers because it provided "a detailed mechanism for judicial consideration of particular issues at the behest of other persons." Id. 104 S.Ct. at 2455. But, unlike producers, the consumers who sought review in Block were not a part of the statutory scheme at all. The Act provides no participation whatever to consumers, whereas it creates a substantial role for producers. In addition, there is nothing in the nature of the remedies provided that suggests an intent to preclude review to producers. Unlike the example the Court used in Block, there is no suggestion that Congress wished to preclude such review in order to prevent undue delay. See id. at 2457.
 
 
 39
 In sum, if we were required to reach the judicial review issue, I would conclude that because substantial doubt about the congressional intent may exist, the general presumption favoring judicial review of administrative actions should control. See id. at 2457.
 
 
 40
 Sound policy reasons also compel that we avoid holding that producers are denied judicial review of marketing orders under the Act. Such a holding relegates producers, as a class, to a "political" remedy. If an individual producer succeeds in a campaign to convice other producers to hold a vote under section 608c(16)(B) on a particular marketing order, then he must convince a majority of the producers to overturn the offensive marketing order in order to obtain relief. This democratic model may pass Constitutional muster. United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939). In my view, however, we should not extend it so as to subject individual rights to majority rule unless clear precedent so requires. No such precedent exists here.[3]
 
 
 41
 Rasmussen v. Hardin, 461 F.2d 595, 598 (9th Cir.), cert. denied, 409 U.S. 933, 93 S.Ct. 229, 34 L.Ed.2d 188 (1972), does not compel a contrary result. In that case, producers who were also handlers sued in both capacities to gain direct judicial review of a marketing order before the administrative remedies granted to handlers only were exhausted. We dismissed their attempt to do so.
 
 
 42
 Here, the plaintiffs are both producers and handlers. Following our guidance in Rasmussen, the plaintiffs, acting in both capacities, first asserted a right to an administrative remedy. The Secretary acknowledged their right to proceed as handlers in an administrative forum, but successfully dismissed the plaintiffs from that proceeding in their capacity as producers. This lawsuit promptly followed. The only capacity in which the plaintiffs asserted a right to relief in the district court was that of producers. Because producers have no administrative remedy to be exhausted, Rasmussen is inapplicable here.
 
 
 43
 We should affirm the judgment below because the plaintiffs lack standing to assert their claims. In order to have standing, a plaintiff must demonstrate: (1) "personal injury fairly traceable to the defendant's allegedly unlawful conduct; and (2) that the injury is likely to be redressed by the requested relief." Allen v. Wright, --- U.S. ----, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984).
 
 
 44
 It is clear from the producers complaint here that they seek primarily to avoid having to process and market navel oranges subject to the restrictions of marketing order No. 907. The damages they assert are alleged to flow from the marketing order. The relief that they seek is an order directing the Secretary to terminate the marketing order or, alternatively, a declaration that the Secretary is compelled to do so. The reason that the relief they seek cannot cure their injury, however, is that they fail to challenge the Act itself. Thus, even if we invalidate No. 907, we cannot prevent the Secretary from fulfilling its obligation under the Act to promulgate a new marketing order. Accordingly, the producers lack standing.
 
 
 45
 Resting our decision on lack of standing would be narrower and more restrained than reaching the judicial review issue. The standing rationale affects only these producers, rather than all producers. Because the court has chosen to rely on a broader rationale which I believe is based upon an unnecessarily expansive reading of Community Nutrition, I concur in the judgment only.
 
 
 
 *
 Honorable David W. Williams, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 The concurrence suggests that our holding barring judicial review by producers is broader than necessary because these producers in any event would lack standing to pursue these particular claims. It is not altogether clear that the producers do not have standing, but it is proper for us not to reach the issue. In Community Nutrition, the Court indicated that the appropriate analysis is to determine first whether judicial review of marketing orders is permitted before undertaking to examine whether the parties seeking such review have standing:
 Since congressional preclusion of judicial review is in effect jurisdictional, we need not address the standing issues decided by the Court of Appeals in this case.
 
 
 [104]
 S.Ct. at 2458 n. 4
 
 
 [1]
 "The Act contemplates the cooperative venture among the Secretary, handlers and producers the principal purposes of which are to raise the price of agricultural products and to establish an orderly system for marketing them. Handlers and producers --but not consumers--are entitled to participate in the adoption and retention of market orders ... The Act provides for agreements among the Secretary, producers and handlers, ... for hearings among them, ... and for votes by producers and handlers
 "[T]he preclusion issue does not only turn on whether the interests of a particular class like consumers are implicated. Rather the preclusion issue turns ultimately on whether Congress intended for that class to be relied upon to challenge agency disregard of the law. See Barlow v. Collins, 397 U.S. at 167, 90 S.Ct. at 838 [25 L.Ed.2d 192 (1970) ]. The structure of this Act indicates that Congress intended only producers and handlers, and not consumers, to ensure that the statutory objective would be realized."
 Id. at 2455 (emphasis added).
 
 
 [2]
 The fourth possible source of legislative intent, collective legislative and judicial history, does not exist here. Unlike the immigration statute at issue in Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953), the AMAA does not succeed a line of similar statutes that the courts had addressed on numerous occasions
 
 
 [3]
 The court would find it ironic to allow producers direct judicial access to air their complaints, but force handlers to pursue an administrative remedy. Although this observation may be in accord with dicta in Block, 104 S.Ct. at 2458, the court would compound the irony by denying producers both an administrative and a judicial remedy