MINNESOTA MILK PRODUCERS AS-
SOCIATION, a non-profit Minnesota
corporation; Bill Dropik; Chester Kol-
stad; Greg Radermacher; Arnold Ness;
Fredrick J. Bianchi; Marlon Restad;
Delbert Mandelko; John Fischer; Lee
Johnston; Leslie Kyllo; and James
Muzzy, Appellants,

v.

Edward MADIGAN, Secretary, United
States Department of Agriculture,
Appellee.

No. 91–1594.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1991.

Decided Feb. 11, 1992.

James T. Massey, Sisters, Or., argued
(Lynn A. Hayes, St. Paul, Minn., on brief),
for appellants.

Herbert E. Forrest, Washington D.C., ar-
gued (Anthony J. Steinmeyer, Washington,
D.C., on brief), for appellee.

Before LAY,* Chief Judge, ARNOLD,**
Circuit Judge, and STUART,*** Senior
District Judge.

ARNOLD, Circuit Judge.

The Minnesota Milk Producers Associa-
tion and its directors (the producers) appeal
from the District Court's dismissal of their
suit seeking to have certain provisions of
milk-marketing orders issued by the Secre-
tary of Agriculture enjoined and declared
invalid under the Agricultural Marketing
Agreement Act of 1937 (AMAA), 7 U.S.C.
§§ 601 et seq.  We reverse and remand.

---

* The Honorable Donald P. Lay was Chief Judge
of the United States Court of Appeals for the
Eighth Circuit at the time this case was sub-
mitted and took senior status on January 7,
1992, before the opinion was filed.

** The Honorable Richard S. Arnold became
Chief Judge of the United States Court of Ap-
peals for the Eighth Circuit on January 7, 1992.

*** The Honorable William C. Stuart, Senior Unit-
ed States District Judge for the Southern District
of Iowa, sitting by designation.

On January 17, 1990, the producers filed this action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, challenging certain provisions of milk-marketing orders covering marketing areas east of the Rocky Mountains. The producers claimed that since these orders were originally promulgated, changed conditions have rendered their current enforcement by the Secretary unlawful under the AMAA. In general, the producers argued that the pricing structure for milk set by the Secretary's orders stimulates an oversupply of milk, which, in turn, causes a decline in the price they receive for their milk. This decline, they concluded, is in violation of the Secretary's obligation to maintain orderly market conditions for the producers under the AMAA. In order to remedy these perceived violations, the producers sought, among other things, an injunction compelling the Secretary to terminate or suspend certain unlawful orders as contrary to the AMAA and a declaration that the orders violate the AMAA.

The District Court dismissed the producers' suit. It held that the AMAA precluded judicial review of their claims. Although this ruling disposed of the producers' claims, the Court went on to state that the producers most likely lacked standing under Article III to bring their claims because the relief they sought would not redress the injury they claimed. From these rulings, the producers appeal.[1]

The Administrative Procedure Act authorizes suits by parties "adversely affected or aggrieved by agency action within the meaning of a relevant statute...." 5 U.S.C. § 702. This authorization is withheld, however, when the relevant statute "[p]recludes judicial review." *Id.* at § 701(a)(1). There is no claim that the AMAA precludes all judicial review of challenges to milk-marketing orders. Indeed, 7 U.S.C. § 608c(15) explicitly provides a cause of action to milk handlers to challenge orders when they have exhausted

administrative remedies. Nor is there a claim that the AMAA explicitly precludes review of the producers' claims. The issue, then, is whether the AMAA impliedly precludes judicial review of milk producers' claims of the kind made in this case. We conclude that it does not.

At the heart of this dispute lies the Supreme Court's decision in *Block v. Community Nutrition Institute*, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). After examining the over-all structure of the AMAA, the Court held that the Act impliedly precluded judicial review of milk consumers' challenges to milk-marketing orders. The Court noted that the AMAA allows only producers and handlers to participate in the administrative proceedings to adopt milk-marketing orders, not consumers. This structure, the Court continued, "indicates that Congress intended only producers and handlers, and not consumers, to ensure that the statutory objectives would be realized." *Id.* at 347, 104 S.Ct. at 2454. Another fact the Court found relevant was that only handlers—the sole group provided with an express cause of action under the Act—had administrative remedies available to them under the AMAA. This analysis led the Court to conclude that "Congress intended that judicial review of market orders issued under the Act *ordinarily* be confined to suits brought by handlers in accordance with 7 U.S.C. § 608c(15)." *Id.* at 348, 104 S.Ct. at 2455 (emphasis ours).

In reaching its conclusion that the AMAA impliedly precluded judicial review of consumers' claims, the Court distinguished its holding in *Stark v. Wickard*, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944). In *Stark*, the Court held that the AMAA did not impliedly preclude judicial review of producer challenges to the administration of market-order-settlement funds. In order to distinguish *Stark*, the *Community Nutrition* Court focused on

---

**1.** The District Court made two additional rulings which the producers have not challenged on appeal: it held that the producers' request for an injunction forcing the Secretary to hold hearings to adopt new marketing orders was moot because the Secretary had convened the hearings; and that the producers' request that the Secretary's new orders contain certain provisions did not involve a controversy ripe for judicial review.

the difference between consumers and producers under the Act. The Court noted that in *Stark* the producers alleged injury to their " 'definite personal rights 'that were' not possessed by the people generally' " which "gave [them] standing to object to the administration of the settlement fund." 467 U.S. at 351, 104 S.Ct. at 2456 (quoting *Stark*). Moreover, the *Community Nutrition* Court emphasized that one of the Act's fundamental objectives is to protect the producers of milk, not the general public. *Id.* at 352, 104 S.Ct. at 2457. Thus, it made sense to allow producers in *Stark* to challenge administration of the settlement fund which was established for their benefit.

The Secretary relies on the Ninth Circuit's decision in *Pescosolido v. Block,* 765 F.2d 827 (9th Cir.1985), to argue that *Stark* and *Community Nutrition* stand for the proposition that producers have a cause of action under the Act only when there is no handler of milk products to protest the Secretary's action. Since handlers could challenge the Secretary's orders at issue here, the argument goes, handlers alone have access to judicial review of these orders.

With all respect to the *Pescosolido* Court, we disagree. It is true that in *Community Nutrition* the Court noted the fact that in *Stark* handlers did not have an interest in the administration of the settlement fund. *Community Nutrition,* 467 U.S. at 351–52, 104 S.Ct. at 2456–57. As the *Community Nutrition* Court indicated, if the Court had not allowed the producers to sue in *Stark,* then there would have been "no forum"—either administrative nor judicial—in which the Secretary's actions could have been challenged. *Id.* at 352, 104 S.Ct. at 2457 (quoting *Stark,* 321 U.S. at 309, 64 S.Ct. at 570). Despite this language, we believe *Pescosolido* read *Community Nutrition* and *Stark* too narrowly. The *Community Nutrition* Court emphasized that an examination of the over-all structure of the Act is necessary to determine if judicial review is

precluded. Thus, even if handlers have the ability to challenge a particular action by the Secretary (a fact we are willing to assume here), that fact is not necessarily dispositive of whether producers' claims are subject to judicial review. Other considerations present here point in favor of judicial review: the fact that handlers in this case have no reason to challenge the Secretary's orders; that the producers are asserting a "definite personal right[ ]" of the kind identified in *Stark;*[2] and that the producers here do not have authority under the Act, 7 U.S.C. § 608c(16), to vote for repeal of the orders they are challenging, because the orders cover production areas in which they are not producers.

We also find the Sixth Circuit's opinion in *Farmers Union Milk Marketing Cooperative v. Yeutter,* 930 F.2d 466 (6th Cir.1991), persuasive on this point. *Farmers Union* involved milk producers' challenge to a milk-marketing order the producers claimed reduced the prices they received for their milk, in violation of the Act. In rejecting *Pescosolido's* analysis and deciding that the claims were judicially reviewable, the Court emphasized that "the purpose of the AMAA is wealth redistribution in favor of milk producers." *Id.* at 474. In the Sixth Circuit's view, judicial review should be available for a claim that an order issued by the Secretary had the opposite effect, because such review would promote the Act's purpose. Thus, the *Community Nutrition* Court's concern—that allowing parties to go outside the regulatory scheme would undermine the objectives of the Act by disrupting that scheme—was not implicated by allowing the producers to bring their claims to court. We agree with *Farmers Union.*

■ Having concluded that the Act does not preclude judicial review of the producers' claims, we next consider whether they have standing under Article III to bring their claims in federal court. That is, have they alleged an injury that the courts are

---

**2.** *Pescosolido* involved a challenge to an order applicable to citrus growers. The Court acknowledged that a claim by milk producers

would present a different situation because the AMAA grants milk producers a definite personal right to minimum prices. 765 F.2d at 832.

capable of remedying? We conclude that they have. The producers have alleged that provisions of the Secretary's orders directly cause a reduction in the price they receive for their milk. Construing these allegations in the light most favorable to the producers, as we are required to do, see, *e.g.*, *City of St. Louis v. Dep't of Transportation*, 936 F.2d 1528, 1532 (8th Cir.1991), we have little trouble concluding that the relief they seek would redress their injury. The Secretary's emphasis on the ongoing rulemaking proceedings to adopt new milk-marketing orders misses the mark. Until those new orders are adopted and implemented, the old orders presumably will continue to harm the producers. Declaring the old orders unlawful and enjoining their enforcement would therefore redress the producers' injury.

The judgment of the District Court is reversed. The cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

STUART, Senior District Judge, dissenting.

I respectfully dissent. In my opinion, under the facts and circumstances of this case, judicial review of the Secretary's Marketing Order is precluded. "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984).

The federal milk marketing program was enacted by Congress as part of the Agricultural Marketing Agreement Act of 1937 (AMAA) to establish and maintain orderly marketing conditions for agricultural commodities and to establish parity prices for farmers. "The regulation of agricultural products is a complex, technical undertaking. Congress channelled disputes concerning marketing orders to the Secretary in the first instance because it believed that only he has the expertise necessary to illuminate and resolve questions about them." *Community Nutrition*, 467 U.S. at 347, 104 S.Ct. at 2454.

The marketing order in question here was effective after the regulatory procedure had been completed. It was approved by handlers of at least 50% of the volume of milk covered by the order and by at least two-thirds of the dairy producers by number or volume of the affected region which included all states east of the Rocky Mountains.

Plaintiffs state their claim as follows:

The Minnesota milk producers claim that the Secretary has acted and is acting outside the narrowly-enumerated authority granted under the AMAA in two distinct ways. First, the Secretary is maintaining and enforcing the Class I price differential provisions, which cause disorderly marketing conditions by stimulating an over-supply of milk, causing a decrease in the price Minnesota producers receive for their milk. Second, the Secretary is maintaining compensatory payment and down allocation provisions, which constitute economic trade barriers between markets east of the Rockies. These provisions are central to the pricing structure of the marketing orders. Together, these provisions affect both the price producers within a given order's marketing area receive for their milk as well as the prices received by producers in other marketing order areas. The Minnesota producers challenge these provisions in all orders east of the Rockies because of the dramatic impact they have on prices Minnesota producers receive for their milk.

They claim that changing conditions have rendered the milk marketing orders—which were lawful when made—unlawful and in violation of the purpose of AMAA "to ensure that dairy producers throughout the country receive fair prices for the milk and that milk is consistently available to consumers in all areas." Appellant's Brief p. 4.

This claim is far different from the claim made in *Stark v. Wickard*, 321 U.S. 288, 64

S.Ct. 559, 88 L.Ed. 733 (1944). There, the Secretary's Order directed the administrator to deduct funds coming into his hands from the producer's sale price to make payments to cooperatives. These deductions reduced "the amount actually received by the producers for their milk". *Id.* at 302, 64 S.Ct. at 567. As the statute assured producers of minimum prices for their milk such a deduction was a clear violation of the statute. There was no other forum than the courts to hear the producers complaint.

Here, the claim involves judgment as to whether or not the order in question is contrary to the express purposes of the AMAA. Such judgment involves the Secretary's expertise. There will certainly be a difference of opinion between the Minnesota–Wisconsin producers and those in other parts of the country east of the Rockies that are benefitting from the order. Those producers are not parties to this action.

I believe that it is to be implied, from the wording of the statute, the statutory scheme, its objectives, its legislative history and the nature of the administrative action involved, that Congress did not intend to provide for judicial review under these facts.

Additional factors that support my position are:

1. The statute specifically gives handlers the right to judicial review but does not mention producers.

2. 7 U.S.C. § 608c(16)(B) provides an administrative remedy for producers. The Secretary shall terminate any marketing agreement when 50% of the producers producing more than 50% of the volume favor termination.

3. The issue before the court involves a complex regulatory scheme and a discretionary decision by the Secretary whose expertise is important. "A court's deference to administrative expertise rises to zenith in connection with the intricate complex of regulation of milk marketing." *Blair v. Freeman*, 370 F.2d 229, 232 (D.C.Cir.1966). It is unlikely that Congress would have intended to imply judicial review of such a complex procedure.

4. Most cases relied upon by the appellants relate to court actions where a new marketing order is involved. This case involves a question of terminating a validly enacted order.

I prefer the reasoning and analysis in *Pescosolido v. Block*, 765 F.2d 827 (9th Cir.1985). I would affirm the trial court.