## UNITED DAIRYMEN OF ARIZONA; Shamrock Farms Company, Plaintiffs–Appellants,

v.

## Ann M. VENEMAN,* Secretary, United States Department of Agriculture, Defendant–Appellee.

### No. 00–16213.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2001.

Filed Feb. 12, 2002.

---

* Ann M. Veneman is substituted for her predecessor, Dan E. Glickman, as Secretary of the Department of Agriculture. *See* Fed. R.App. P.

Sean D. Garrison, Phoenix, AZ, for the plaintiffs-appellants.

James C. Hair, Jr., Assistant United States Attorney, Phoenix, AZ, for the defendant-appellee.

Before: BRUNETTI, KLEINFELD and THOMAS, Circuit Judges.

## OPINION

BRUNETTI, Circuit Judge.

In this appeal, we consider whether under the Agricultural Marketing Agreement Act of 1937 ("AMAA" or "the Act"), as amended, 7 U.S.C. §§ 601–626 (2001), Appellants United Dairymen of Arizona ("UDA") and Shamrock Farms, two Arizona milk producers, have standing to bring a direct suit challenging the producer-handler exemption. We conclude that Appellants cannot bring a direct suit challenging the exemption and affirm the district court's decision.

## BACKGROUND

Demand for milk fluctuates from day to day and from season to season. Due to the fluctuating demand and to prevent shortages in the milk supply, the industry must carry a constant surplus. In the 1930s, the inherent instability in milk

prices together with competition for the fluid milk market prompted Congress to include milk price regulation in the AMAA. *See Block v. Community Nutrition Inst.,* 467 U.S. 340, 341–42, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). The federal government has regulated the milk market continuously since 1937. Under the AMAA, regional raw milk prices are regulated under the Federal Milk Marketing Order System. *See id.* (" '[T]he essential purpose [of this milk market order scheme is] to raise producer prices.' ") (quoting S.Rep. No. 1011, 74th Cong., 1st Sess., 3 (1935)). The system regulates the milk market primarily through minimum prices and a pooling mechanism known as the "producer-settlement fund." To implement this system, the Secretary has divided the country into Milk Marketing Areas, each governed by a separate milk order. 7 U.S.C. § 608c. The particular order at issue in this action is Federal Order 131, which governs the Arizona–Las Vegas marketing area. 7 C.F.R. § 1131.2 (2002).

Under Order 131, milk products are divided into three categories for purposes of price regulations and producers are paid through the mechanism of the producer-settlement fund. Each month the Secretary sets a minimum price for milk used to produce each class of milk product. Class I is fluid milk, and commands the highest price. Surplus milk is processed into Class II and III milk products. Class II includes soft dairy products such as yogurt, cottage cheese, and ice cream. Class III contains the least perishable milk products, such as butter, powdered milk, and some hard cheeses. Milk for Class III use receives the lowest price. All businesses that process raw milk into products for the marketplace, or milk "handlers," are bound by the class prices.

Despite the varying class prices, the pricing regulations guarantee a uniform price to milk producers. This uniformity is accomplished through the computation of blend prices and the pooling mechanisms of producer-settlement funds. Each month, each market administrator computes the total value of all milk purchased by all handlers in the marketing area based on the minimum class prices. The administrator then divides this value by the total quantity of raw milk purchased by the handlers to determine a "blend price." All milk producers in the marketing area receive this blend price for their raw milk. The uniform pricing for producers must be combined with a pooling system for handlers in order to avoid inequities.

"Producer-handlers" are exempt from the pricing and pooling requirements of the AMAA. Producer-handlers are vertically integrated dairy businesses that process and market milk products from the raw milk produced by their own dairy herds. Producer-handlers may not contribute to or withdraw from a marketing area's producer-settlement fund, and they are not subject to the minimum price requirements. Therefore, producer-handlers that can process and market most of their milk as Class I products have an advantage over non-exempt producers and handlers. On the production side, they are not limited by the blend price and on the handler side, they do not have to contribute to the settlement fund. On the other hand, producer-handlers bear the burden of managing their surplus and the risks of excess supply.

The producer-handler exemptions vary from area to area and are set out in each Milk Marketing Order. The orders impose a series of requirements on businesses that seek to qualify for the producer-handler exemption. Since 1994, the Secretary has permitted Sara Farms Dairy L.L.C. ("Sara Farms") to claim exempt status as a producer-handler. Sara

Farms owns and operates a milk bottling plant located in Yuma, Arizona at which it receives raw milk for processing and distribution within Order 131. In March of 1999, the Appellants filed this action. Appellants argue that the producer-handler exemption is invalid under the AMAA and that the producer-handler exemption violates the equal protection guarantees of the Fifth Amendment. Alternatively, if the producer-handler exemption is valid, Appellants seek declaratory and injunctive relief.

Appellants moved for partial summary judgment. The Secretary moved to dismiss on the grounds (1) that the court lacked subject matter jurisdiction; (2) the initiation of an enforcement proceeding under § 608a is committed to agency discretion and is not subject to judicial review; and (3) the requirements of 28 U.S.C. § 1346(a)(2) were not met. The district court issued an order on May 18, 2000, holding that UDA and Shamrock Farms lacked standing to challenge the promulgation or implementation of the producer-handler exemption. The court, therefore, lacked subject matter jurisdiction and dismissed their claims. Judgment was entered on June 21, 2000.

The district court relied on this court's holding in *Pescosolido v. Block*, 765 F.2d 827 (9th Cir.1985), in reaching its conclusion. The district court read *Pescosolido* as limiting *Stark v. Wickard*, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944), to "situations in which producers claim that some 'definite personal right' granted by the statute is being infringed by the Secretary acting outside the scope of his delegated authority, with no handler having standing to protest." *Pescosolido*, 765 F.2d at 832. The district court held that the plaintiffs could only invoke the *Stark* exception if they could show: (1) the producer-handler exemption threatens their definite, personal rights; (2) in allowing the producer-

handler exemption, the Secretary is acting outside the scope of his delegated authority; and (3) no handler would have standing to protest the producer-handler exemption.

The district court did not address the first two prongs because it held that Appellants could not meet the third. The district court reasoned that the producer-handler exemption affects both producers and handlers. It injures producers by reducing the blend price and it injures handlers by providing a competitive advantage to producer-handlers who do not have to contribute to the settlement fund or pay the mandatory minimum prices. Consequently, the district court concluded that non-exempt handlers would have standing to challenge the exemption in an administrative proceeding. Therefore, Appellants could not show that *no handler* would have standing as required by *Pescosolido*.

## DISCUSSION

### A. *Jurisdiction and Standard of Review*

 Dismissal by a district court for lack of subject matter jurisdiction is reviewed *de novo*. *Pacific Maritime Ass'n v. Local 63, Int'l Longshoremen's and Warehousemen's Union*, 198 F.3d 1078, 1080 (9th Cir.1999). A district court's interpretation of a statute is also a question of law that is reviewed *de novo*. *Id*.

### B. *Appellants' Capacity*

We first address Appellants' argument that under *Dairylea Coop. Inc. v. Butz*, 504 F.2d 80 (2d Cir.1974), a cooperative that is both a producer and a handler will be treated as either a producer or a handler depending on the "interests [the cooperative] represent[s] in the action then pending." *Id*. at 83. In *Dairylea* the Second Circuit held that Dairylea was acting as a producer because the aspect of the

milk order the cooperative was challenging affected the interests of its producers. *Id.* ("The concern of Dairylea in this action is not the money which it paid [as a handler] into the Producer–Settlement Fund ... but with the money collected on behalf of its producer-members as authorized by 7 U.S.C. § 610(b)(1) (1970) which will increase if the action succeeds.").

UDA is a cooperative that acts as a handler as well as a producer. UDA owns and operates a milk processing plant in Tempe, Arizona. In this action UDA is challenging the producer-handler exemption because it reduces the uniform blend price paid to producers and gives producer-handlers a competitive advantage over other handlers. Unlike in *Dairylea*, UDA is not only representing its producers' interests but also its handlers' interests. Therefore, UDA may be deemed a handler in suing in its representative capacity.

Shamrock Farms sells its raw milk to Shamrock Foods. While the two companies are related, the record shows that the two companies are separate businesses. Although the companies appear to be separate, we note that in his declaration Norman McClelland, the president of Shamrock Farms as well as the chairman of Shamrock Food, states in paragraph three of his declaration:

> The exemption of fluid milk sales of a producer-handler from the pooling requirements of the Order reduces the monthly value of the producer-settlement fund, and, therefore, reduces the monthly uniform blend price paid to the Order's producers, including Shamrock. It also gives producer-handlers, such as Sara Farms, a competitive advantage over other handlers, including Shamrock Foods Company.

As a producer Shamrock Farms does not have to exhaust its administrative remedies. Even if we assume arguendo that UDA is acting as a producer in bringing this suit, Shamrock Farms and UDA may still be precluded from seeking judicial review under the AMAA.

## C. *The AMAA and Producers*

The AMAA expressly provides procedures under which handlers may challenge the provisions of a milk marketing order through administrative review. 7 U.S.C. § 608c(15)(A). Handlers aggrieved by the actions of the Secretary must first petition the Secretary for relief. The Secretary shall provide a hearing and then rule on the petition. *Id.* Courts have also construed the Act to grant handlers a right to judicial review after they have exhausted the administrative process. *See, e.g., United States v. Ruzicka,* 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946). The AMAA contains no provision, however, under which producers can challenge a marketing order through administrative review.

The Supreme Court in *Stark,* 321 U.S. at 303–04, 64 S.Ct. 559, addressed the rights of producers to seek judicial review of regulatory actions. The producers in *Stark* sought to challenge the Secretary's practice of deducting certain administrative expenses from the settlement fund before calculating the blend price, resulting in a reduced price for producers. *Id.* at 303, 64 S.Ct. 559. The Court held that the producers could obtain judicial review of the Secretary's actions because the AMAA had given producers "definite, personal rights" and the "silence of Congress as to judicial review is, at any rate in the absence of an administrative remedy, not to be construed as a denial of authority to the aggrieved person to seek appropriate relief in the federal courts in the exercise of their general jurisdiction." *Id.* at 309, 64 S.Ct. 559. The Court concluded that because handlers could not question the use of the fund because they had no financial interest in the fund or its use, there

was no forum in which the Secretary's actions regarding administration of the fund could be challenged. Therefore, judicial review of the producers' complaint was necessary to "ensure achievement of the Act's most fundamental objectives—to wit, the protection of the producers of milk and milk products." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 352, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984).

In *Community Nutrition,* the Court further addressed the issue of standing. The case presented the question of whether consumers of dairy products may obtain judicial review of milk market orders. The Court held that consumers may not obtain judicial review because the AMAA did not intend to cover consumer participation. "The Act contemplates a cooperative venture [only] among the Secretary, handlers, and producers." *Id.* at 346, 104 S.Ct. 2450. Allowing consumer participation would only disrupt the administrative scheme. *Id.* at 347–48, 104 S.Ct. 2450. The Court noted that unlike in *Stark* the "preclusion of consumers will not threaten realization of the fundamental objectives of the statute," i.e., the protection of the producers of milk and milk products. *Id.* at 352, 104 S.Ct. 2450.

D. *Pescosolido v. Block*

Our circuit has read *Stark* and *Community Nutrition* to provide a narrow exception for producers seeking judicial review. In *Pescosolido v. Block*, 765 F.2d 827 (9th Cir.1985), we held that *Stark* "is limited to situations in which producers claim that some 'definite personal right' granted by the statute is being infringed by the Secretary acting outside the scope of his delegated authority, with no handler having standing to protest." *Id.* at 832. In discussing the last phrase involving the standing of handlers, this court reasoned that *Stark* allowed producers to sue only where their interests were not represented by those of handlers, i.e. where handlers

would have no interest and would, therefore, not challenge the Secretary's actions. *Id.* This reading is consistent with the Supreme Court's holding in *Community Nutrition,* where the Court considered the interests of the parties involved and found that consumers' interests are similar to those of handlers and that, therefore, actions affecting consumers would also affect handlers who would take steps to challenge those decisions.

We find that the record here supports the district court's holding that the producers are precluded from seeking judicial review because their interests are adequately represented by the handlers. As the district court noted, the exemption injures producers by reducing the blend price and it injures handlers by providing a competitive advantage to producer-handlers. A letter addressed to the Dairy Division Director, Richard McKee, by the law firm representing UDA, Shamrock Farms, Shamrock Foods, and Agri–Mark, Inc., supports this conclusion: The pertinent part of the letter states:

> With the expansion of producer-handler distribution into channels of commerce in direct competition with fully regulated handlers, it is apparent that handlers adversely affected by significant producer-handler competition are no longer willing to accept minimum pricing regulation under a system from which one or more of their major competitors are exempt. Producers who are the intended beneficiaries of the regulatory system are also affected by the exemption. Expansion of the producer-handler share of the market's Class I sales not only reduces producer returns; it poses the long-term threat of a breakdown of the regulatory system.
>
> While legislative history may support exemption from pricing and pooling of producer-handlers who qualify as "small

businesses" with a *de minimus* effect on the market, legislative history cannot be invoked to overcome the command of § 8c(5)(C) of the AMAA which requires that the minimum pricing and pooling provisions of the orders be applied to *all* "handlers (including producers who are also handlers)." We have previously brought to the attention of the Dairy Division judicial decisions which confirm the authority of the Secretary to fully regulate handlers with respect to the marketing of milk of their own production. We believe that those decisions, coupled with equal protection principles of the Constitution, compel the Secretary to extend to producer-handlers the same regulatory obligations as are imposed on other handlers with whom they compete.

It is evident that the distributor (or handler) element of the dairy businesses in this case has a significant interest in pursuing Sara Farms and their exempt status. Unlike in *United States v. Rock Royal Co-op., Inc.,* 307 U.S. 533, 560–61, 59 S.Ct. 993, 83 L.Ed. 1446 (1939), and *Stark,* the non-exempt handlers here have standing because of their expressed financial interest that is being affected by the dairy division's application of the producer-handler exemption. *See Stark,* 321 U.S. at 308, 64 S.Ct. 559.

■ Allowing the plaintiffs in this case to seek judicial review when they are also handlers (such as UDA) or are associated with handlers (such as Shamrock Foods) who have an interest in ensuring that the producer-handler exemption is valid and not unjustly enforced, allows handlers to evade the statutory requirement that they first exhaust their administrative remedies. Such a result would undermine "Congress' intent to establish an equitable and expeditious procedure for testing the validity of orders." *Community Nutrition,* 467 U.S. at 348, 104 S.Ct. 2450 (internal quotation marks omitted). Even

though the Second Circuit in *Dairylea* reluctantly concluded that Dairylea was a producer that was not required to exhaust any administrative remedies, it further observed that "[c]onsidering the complicated nature of the provisions of the Act and the labyrinthian regulations issued thereunder, it would be most appropriate for Dairylea's complaint to be considered first by the Secretary, who possesses the facilities and the expertise to review and interpret the Act and regulations herein involved." 504 F.2d at 82. We agree with that assessment of the Act. This case is the perfect example of when a party should first exhaust administrative remedies before judicial review.

Appellants note that other circuits have allowed producers to seek judicial review. *See Minnesota Milk Producers Ass'n v. Madigan,* 956 F.2d 816 (8th Cir.1992); *Farmers Union Milk Mktg. Coop. v. Yeutter,* 930 F.2d 466 (6th Cir.1991) (involving a location adjustment amendment to a milk marketing order that created a fight between two different groups of dairy farmers). These courts have held that an examination of the overall structure of the Act is necessary to determine if judicial review is necessary. *See, e.g., Minnesota Milk Producers,* 956 F.2d at 818. In *Minnesota Milk Producers,* the court held that the producers had standing to seek judicial review because the handlers did not have a reason to challenge the Secretary's orders, the producers were asserting a definite, personal right, and the producers did not have authority under the Act to vote for repeal of the orders they were challenging because the orders covered production areas in which they were not producers. *Id.*

We do not find these circuit cases persuasive based on the facts of our case. Unlike in *Minnesota Milk Producers,* the non exempt handlers governed by Order

131 have explicitly stated in the letter sent by their counsel to the dairy division that they are affected by the producer-handler exemption and are seeking to challenge the Secretary's application of the exemption. In addition, the producers had the authority to vote for repeal of the order they are challenging. Before any market order may become effective, it must be approved by at least two-thirds of the affected dairy producers. 7 U.S.C. § 608c(8), 608c(5)(B)(i). The Secretary may impose the order without receiving approval of the handlers of at least 50% of the volume of milk covered by the order, but the Secretary cannot proceed with the producers' consent. 7 U.S.C. § 608c(9)(B).

The Supreme Court in *Stark* allowed the producers to seek judicial review because if it did not there would be no forum—either administrative or judicial—in which the Secretary's actions could have been challenged. 321 U.S. at 309, 64 S.Ct. 559. In this case, unlike in *Stark*, the Secretary's actions can be challenged in the administrative forum by the handlers who have a financial interest in the manner in which the producer-handler exemption is being applied. The record before us supports this conclusion.

## CONCLUSION

For the reasons stated above, we find that the AMAA precludes Appellants from seeking judicial review of the producer-handler exemption.

**AFFIRMED.**