GRIFFITH, Circuit Judge,
dissenting in part and concurring in the judgment in part:
I write separately because I believe the Agricultural Marketing Agreement Act of 1937, Pub.L. No. 75-137, 50 Stat. 246, precludes judicial review of the producers’ claims.
The Administrative Procedure Act grants a cause of action to “[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.” 5 U.S.C. § 702 (2006). It withdraws that cause of action “to the extent that ... statutes preclude judicial review.” Id. § 701(a)(1). Preclusion may be found in the express language of a statute or in “the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.” Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). “[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded.” Id. at 349.
The Act expressly provides only to handlers, and no one else, a right to petition the Secretary of Agriculture for review of a marketing order and to obtain judicial review of the Secretary’s ruling in response. 7 U.S.C. § 608c(15) (2006). The majority concludes nevertheless that producers have a right to judicial review because, unlike the consumers in Block, they play an “active role ... during the rule-making process,” Maj. Op. at 823. But that does not mean Congress intended producers to be afforded judicial review for any complaint they might have with a marketing order.[1] To the contrary, their *834 important role at the agency level explains why Congress withheld judicial review from them. No marketing order or amendment may issue without the approval of two-thirds of the affected producers (measured either by number or by volume of milk produced). See 7 U.S.C. § 608c(8)-(9). Producers can veto a proposed order for any reason; a court can only overturn an order if the Secretary has acted arbitrarily, capriciously, or contrary to law, see 5 U.S.C. § 706. The producer referendum is a far more powerful tool to challenge an action by the Secretary than the deferential review of a judicial forum. Ordinarily, producer interests will not, as the majority fears, “go unvindicated” without the availability of judicial review, Maj. Op. at 823. By contrast, Congress gave handlers a judicial remedy because they may vote on, but cannot block, a marketing order. An order or amendment may issue if fifty percent of the affected handlers vote to approve it. But if the handler referendum fails, the Secretary can nonetheless issue the order if he determines that the handlers’ disapproval prevents the effectuation of the Act’s policy and that the order is necessary to implement that policy. See 7 U.S.C. § 608c(8)-(9). No similar override is available if the producers vote down the proposed order.
In some cases, however, the producer referendum is not an adequate forum in which to challenge unlawful actions of the Secretary. As the Court noted in Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944), the producers’ veto power “cannot protect minority producers against unlawful exactions which might be voted upon them by majorities.” Id. at 307, 64 S.Ct. 559. If the Secretary’s proposed action would benefit some producers at the expense of others, there is a risk that the majority producers will exploit the referendum process to approve measures in marketing orders that discriminate against minority producers. In these instances, judicial review is available for the minority producers. For example, the minority producers in Stark challenged a provision that required the market administrator to deduct a certain amount from the money paid by milk handlers before distributing it to producers. The deducted amount would then be paid only to producers who were members of cooperatives. See id. at 300-01, 64 S.Ct. 559. By sanctioning higher payments to producer cooperatives and lower payments to independent producers, this provision threatened the statutory objective of producer equality. Because the producer cooperatives had sufficient voting power to control the outcome of the referendum regardless of the lawfulness of the provision, there was no adequate forum in which the minority producers could challenge the provision as unlawful. And without judicial review for their claim, no group could be “relied upon to challenge agency disregard of the law,” Block, 467 U.S. at 351, 104 S.Ct. 2450.
The majority reads Stark to require judicial review of all claims by producers. But Block emphasized that the structure of the Act demonstrates Congress’s intent “that judicial review of market orders issued under the Act ordinarily be confined to suits brought by handlers,” 467 U.S. at 348, 104 S.Ct. 2450. The Court viewed the result in Stark as a limited exception applicable in “certain” cases, id. at 351, 104 S.Ct. 2450, when judicial review is “necessary to ensure achievement of the Act’s most fundamental objectives,” id. at 351-52, 104 S.Ct. 2450. When divergent producer interests threaten the ability of mi *835 nority producers to use the forum provided by the Act — the referendum — -judicial review is permitted to safeguard the primary statutory objective: “to ensure that the benefits and burdens of the milk market are fairly and proportionately shared by all dairy farmers,” id. at 342, 104 S.Ct. 2450; see also 7 U.S.C. § 602 (declaration of statutory policy). Judicial review of orders and amendments that discriminate between producers ensures that the destabilizing producer competition targeted by the Act, see Block, 467 U.S. at 343, 104 S.Ct. 2450, does not infect the milk marketing orders themselves.
Permitting judicial review of producers’ claims in this narrow set of circumstances is consistent with our precedent and that of other circuits. The eases cited by the majority in support of a more general grant of judicial review for producers each involved divergent producer interests comparable to the circumstances in Stark. See Alto Dairy v. Veneman, 336 F.3d 560 (7th Cir.2003) (Wisconsin producers who sold milk in Mideast region challenged amendment of Mideast pooling provision adopted without notice to them); Minn. Milk Producers Ass’n v. Madigan, 956 F.2d 816 (8th Cir.1992) (producers outside marketing area, who could not vote on the challenged order, argued that it stimulated overproduction in other areas); Farmers Union Milk Mktg. Coop. v. Yeutter, 930 F.2d 466 (6th Cir.1991) (rural producers challenged location adjustments that favored producers closest to cities); Suntex Dairy v. Bergland, 591 F.2d 1063 (5th Cir.1979) (independent milk producers challenged bloc voting by large producer cooperative); Dairylea Coop., Inc. v. Butz, 504 F.2d 80 (2d Cir.1974) (recent market entrant challenged provision resulting in lower prices for newly entering producers); Blair v. Freeman, 370 F.2d 229 (D.C.Cir.1966) (distant producers challenged “nearby differential” in price that advantaged producers closest to New York City); cf. Pescosolido v. Block, 765 F.2d 827 (9th Cir.1985) (prohibiting judicial review of orange growers’ claim that Secretary was not ensuring parity prices, an interest common to all growers).
The difference between this case and those — the one that “eludes” the majority, Maj. Op. at 825 — is that the producers here had an adequate forum in which to challenge the Secretary’s actions because the new make allowances treat all producers uniformly. Because the producers’ interests here are all aligned in the same direction, the risk that existed in Stark of larger producers capturing the referendum process to unlawfully disadvantage the minority is not present. The producer referendum thus served its purpose as a check on the Secretary’s statutory authority. Judicial review is not necessary to vindicate the objectives of the Act, and we should defer to the congressional preference — expressed in the Act’s structure — to preclude that review. I would affirm the district court’s ruling that judicial review is precluded and remand with direction to dismiss the producers’ claims.

. The majority purports to limit its grant of judicial review to cases where producers claim a violation of their definite and personal rights. See Maj. Op. at 824, 827. But the fact that producers have a "definite and personal” right at stake in the contested order, as they no doubt have in this case, tells us only that they have statutory (as well as constitutional) standing. It does not tell us whether Congress has precluded them from enforcing this definite and personal right in court. See Stark v. Wickard, 321 U.S. 288, 306, 64 S.Ct. 559, 88 L.Ed. 733 (1944) ("[Ejven where a complainant possesses a claim to executive action beneficial to him ... it does not necessarily follow that actions of administrative officials, deemed by the owner of the right to place unlawful restrictions upon his claim, are cognizable in appropriate federal courts of first instance.”); Block, 467 U.S. at 351, 104 S.Ct. 2450 (explaining that the Stark producers' "definite and personal rights” gave them "standing to object to the administration of the settlement fund,” but that this “standing could not by itself ensure judicial *834 review of the Secretary's action at their behest”); id. at 353 n. 4, 104 S.Ct. 2450 (finding no need to address the constitutional and statutory "standing issues” because judicial review was precluded).